Grayson Consulting v. Vision International, and Mr. Byrd, it would be a pleasure to hear from you. Good morning. Thank you. May it please the Court, my name is Tucker Byrd and I represent the appellants Alan Grayson, the AMG Trust, and Grayson Consulting. These consolidated appeals present two narrow issues which, wrongly decided by the trial court, have profound consequences in the court below and allow parties who are involved in one of the largest Ponzi scheme this country has ever seen to escape justice. The first issue concerns the dismissal of Vision International for lack of personal jurisdiction. That Vision CEO, Paul Jarvis, and Chief Legal Officer, Irma Papacosta, were neck deep in the scheme, seems beyond reasonable debate. Whether the company, Vision, however, could be implicated turned on the fundamental question of whether they were acting within the course and scope of their employment. If they were, then a priori, Vision could have and should have expected to be hailed into court in South Carolina, whether using an agency, effects test, or conspiracy theory to reach them. The trial court missed the mark in its jurisdictional analysis in several ways. First and fundamentally, the trial court applied the wrong legal standard because a pretrial evidentiary hearing was not held. The appellants could not... You say a hearing was not held? I thought they did have a hearing. A hearing was held, Your Honor, but not an evidentiary hearing. Testimony was not presented. I understand, but that doesn't mean there wasn't a hearing. Did the court have facts before it? Did it have the affidavits and discovery that had been conducted? It did have, Your Honor. Okay, so all of that was presented to the court and the court was considering those facts. It did. It considered the record facts, what we would call discovery facts. However, it did not receive live testimony. It was not an evidentiary... Did anybody ask for live testimony or proffer live testimony? Your Honor, the context was not that that was even allowed. Just a minute. I understand these things. They have a hearing on it, and you stand up and argue the case, but I also had many, many lawyers stand up and say, Your Honor, that's a disputed fact, and I've got Mr. Jones here. I'd like to put on some testimony, and you let him in. The question is, did anybody ask to put it on a live witness as opposed to presenting the discovery evidence? Your Honor, that did not actually come up in the hearing. All right. The way it... Let me just get to my point, though. My point is that the district court was not considering a raw motion to dismiss an allegation. The court was considering a motion coupled with all the facts that the parties assembled, and no one has suggested that some facts have been omitted. And in that context, the court, in a preliminary motion, has a right to find facts, to weigh the evidence, and we review for clear error. And this notion that it has to be evidentiary is just another form of getting evidence before the court. Well, but, in fact, that's not what the cases coming out of the Fourth Circuit hold. What they essentially hold is, first of all, the plaintiff ultimately has the burden of a preponderance of the evidence to prove the basis for jurisdiction. And certainly the court can deal with that one or two ways. It can hold a preliminary pretrial evidentiary hearing. Why an evidentiary hearing? The Supreme Court has said that you can find facts. A district court can find facts on affidavits. You can find its role. The court's role is to dispose of these motions. If it does it without facts, it has to do your standard like any 12B6 type of standard. But if it has facts before it and the parties have presented that, then it seems to me now the court's in the role of determining whether those facts support jurisdiction or not. And we review that for clear error. Well, except if the court does not conduct an evidentiary hearing, as in receive live testimony where it can assess it. Why is live testimony necessary? Because that's what the cases have consistently held. The cases have consistently held. Do the courts say anything about that? No, sir, they do not. But the findings out of this circuit have consistently held. When you say the cases, you point to one unpublished decision by our court that says that. But I'm not aware of any published authority that makes that distinction that you're making now. Well, the case that we cited, the Milan case, the Mitrano case. I just don't understand why live testimony has to be presented in order to make a finding if testimony has been presented by way of affidavit, documents, and so forth. In other words, if there is an inadequacy of factual presentation and you made a request and said, I'd like to put on exhibits A and B, and the court says, no, I've got enough, you've got an argument. But in this case, the facts are fully presented. There's nobody claims it was an omitted fact. And the fact that somebody didn't present an affidavit with live testimony to me is inconsequential for the purpose being served. Well, but Your Honor, what you're doing there is imposing a burden upon the plaintiff, which doesn't exist ultimately. Not a burden. No, but we face this same situation in instances of subject matter jurisdiction. And it arises particularly in diversity of citizenship cases. And the question there is where is somebody domiciled or whether they're a citizen of this state or that state. And the court conducts jurisdictional discovery. But, you know, I've never thought it necessary. And, you know, arguably subject matter jurisdiction is every bit as important as personal jurisdiction because it's not waivable. And the district court will conduct jurisdictional discovery but have found facts on the basis of a hearing without live testimony or jurisdictional discovery. And we've said that's fine. I mean, I've sat in those cases. And jurisdictional discovery has never, we've never tried to tie a district court's hands and say you have got in every instance to have live testimony whether you think it's necessary or not. I mean, we don't do that on summary judgment motions, which are dispositive. We don't do that on jurisdictional discovery motions. I mean, the trial courts have to have some latitude. Well, Your Honor, if I can take the summary judgment example, which is a good one, that's an instance where the court can resolve an issue. They don't have to. They don't have to have live testimony. Exactly. But in that case you have a heightened standard to protect non-movement. There has to be no genuine issue of material fact. That's jury trial protection. That's imposed by the Constitution. And so you cannot preempt juries' right to find facts. But the motions with respect to jurisdiction are court matters for the court to decide. And the court can resolve them in any way it wishes under the rules. That is, they can take evidence. They can take affidavits, conduct discovery, limited discovery. Or the parties theoretically could stand before the court and agree these are the facts, and then the court make a ruling. The real question is if you were dealt with injustly because there wasn't evidentiary hearing, the question is you'd have to show you wanted to put on some evidence and proffer it, or the facts that are presented through the affidavits aren't complete. But I understand in this case, this particular case, the facts are before the court. The discovery was complete, and nobody has suggested that there was a witness who had presented an additional fact that was denied. But, Your Honor, if you consider the context of going to the hearing where you've had jurisdictional discovery, absent an evidentiary hearing, the non-moving, in this case my clients, go to court knowing all it has to do is show a prima facie case. It's almost as if the court's going to decide it without facts. But when the court decides a matter with facts, you're arguing the facts. Didn't you argue the facts before the court? Sir, we have to argue facts to make the prima facie case. You always have to argue the facts. There's no difference in burden. The question is how does the court get the evidence, through an affidavit or through live testimony? And live testimony adds nothing unless there's credibility or additional facts. Well, but see, you're dividing the question then. Was credibility, would it have been an issue? Certainly, we saw this in Judge Norton's treatment. What he essentially said was, he looked at the various e-mails and whatnot, and he said it's just as likely that the e-mails could show that there was action not on behalf of vision as it was on behalf of vision. I don't know where all this is going as a practical matter, because there was a jury trial below, and I guess Total Eclipse was a defendant in that jury trial, correct? That's correct, Your Honor. Okay.  There's an earlier settlement or an early $150 million award that you got, but Total Eclipse prevailed in the jury trial below, and it seemed to me, looking over the record and the facts, that arguably, Total Eclipse was more implicated than vision. Even if we agreed with you, and I think you've got a lot of hurdles on the personal jurisdiction point to get over, what's it going to do to send this thing back for a separate jury trial against vision when the more implicated party has already prevailed? I mean, I just don't see where this is getting us. Well, I'll tell you exactly where it gets us, Your Honor. You made a statement that Total Eclipse was more implicated, and I would take issue with that fact. The record is clear that vision itself did things extraordinarily more implicating than Total Eclipse did. For example, leaving aside for a minute that the chief executive and the chief legal officer sent e-mails, vision, under their leadership, also assisted in the transfer of Bancroft, one of the clearly implicated entities, to Cypress. It then proceeded to liquidate the entity. It dispersed the assets. It relocated the documents of Bancroft. All of this under the auspices of vision. Those were not Total Eclipse issues. The connection you'd have to make is that if Total Eclipse isn't liable, then vision could not be liable. I think the record is clear that actually they used vision as much as and probably more than. You're talking about Jarvis and Papa Costa. Yes, Your Honor. Papas Costa. Papa Costa. Right. And the district court's hearing, you know, it took account of those, and he said, okay, these were folks that were out on their own. They weren't doing anything here to really benefit the corporation. They didn't purport to represent VISTA. Many of the communications were not on behalf of VISTA. They resulted in no transaction whatsoever. So what you're trying to say, didn't the district court take that into account by talking about the degree to which Mr. Jarvis and Mr. Papa Costa were freelancing? Well, that was his conclusion. Unfortunately, he weighed the evidence when it was not an evidentiary hearing in the classic sense of the matter. For example, we do know, based upon the record, that vision got money for consulting fees. We do know that, and this is where you get to the basic point, when the CEO and the chief legal officer, presumably at the helm of this organization, do things repeatedly and profoundly, at a certain point in time the actions of those executives become the persona of the company. Now, the judge made a judgment call without all the evidence in front of it that, in fact, this was. . . What evidence didn't he have? He had affidavits. What evidence did he not have? Well, he did not have the live testimony of witnesses, certainly. Yeah, but that's just a form of evidence. But not really, because if that were true. . . Did he say, I want to put on evidence? Your Honor, that was not the context. I know the context. I was a district judge. I've had many of those hearings, and I know exactly what happens. We schedule a hearing, and I call on the plaintiff, and I call on the defendant, and they talk. But I also know plaintiffs and defendants, if they didn't think the record was complete, would say the record's not complete. I need to put some evidence on, or I need to take a deposition and present it. But, Your Honor, as we went into that hearing, we look at it. We know, look, at this point it's a prima facie hurdle. That's what it is. It's not prima facie. It's way beyond that. Well, but actually. . . Mr. Holt, you argued facts. The prima facie relies on the allocation of jurisdiction. You get a benefit for that if there's no opposition. But once the record is developed on this, now you have a bundle of facts. And the court has to look at the motion and the facts and make a determination. And in doing that, it can weigh the facts. It can balance and make findings of fact. And if you want, if it wants, it can have you put on evidence. But I must say, it seems to me in a case like this, it would be a waste of time to put on witnesses. But with all due respect, and I have 30 seconds here and I'll try to be brief, the cases, and this has come up more often than you would think, what it really says is if the court's not going to defer the ruling until the trial on the merits, it has to conduct an evidentiary hearing and that record discovery. . . What do you call that? That's just made up. It's cited repeatedly in the cases. Once in a while, you need an evidentiary hearing, but they're often referring to the fact you have a hearing. But the main thing these courts are referring to is the court is resolving facts as opposed to based on the pure allegation. If you allege jurisdiction and set forth the prima facie, you get to rely on that. But if the other side comes in and lays out the facts and you put in facts, now it's a factual fight. But if it's conflicting facts, which at the bare minimum they are here, the court cannot resolve it without live testimony. Before you sit down, was there any extended discussion about this evidentiary burden in the hearing below? No, sir. Did you put the judge on notice that you thought you were entitled to a lower burden? No, sir, because it's not. . . the answer is no. That's the simple answer. You know, the Supreme Court has said that district courts' role is to resolve facts and that they can resolve facts on these preliminary matters based on affidavits alone, and do. That is their role. They can't make credibility findings without looking at the witness. They can resolve facts in factual disputes. And if I may respond. Certainly, the judge can resolve, I would say, non-conflicting facts or unrebutted facts. Whereas here, at best. . . Why do you say unrebutted? Because if you. . . The role of the court is to resolve all facts that it needs to to make the decision. But if it can't do it on the paper facts. . . Why not? It has to. . . because, in fact, they conflict. It has to do it. . . So what? Because then there. . . You have to make a decision then as between. . . just like any fact finder does. Who says you have to look at the witness in the face? Well, much like in a summary judgment, if there is an issue of fact, you cannot do it on the papers. It has to be done with a live testimony. Well, that's because the Constitution says you have to. But this is a preliminary. . . This is a question of jurisdiction which is not committed to juries. But, in fact, not clearing this threshold precluded the claim altogether. All right. I think we should. . . All right. We have no further questions. All right. Thank you, Your Honors. Thank you. Mr. Duffy. Your Honors. Judge Wilkinson, if it pleases the Court, appellees have divided our time leaving three minutes for Mr. Wall to address the aiding and abetting judgment as a matter of law issue. All right. That's fine. I see you've got 17 minutes now. Thank you, Your Honor. Brian Duffy here on behalf of, at the moment, Vision International People Group, Public Limited, addressing the jurisdictional issues that the Court has been entertaining thus far. Your Honors, the District Court did not err in making its findings, and it's unfair what is being asked of it by the appellants. The appellants had five years from the time when Vision first appeared challenging jurisdiction. The Court denied it without prejudice in 2008, in February, allowing jurisdictional discovery. Five years later, we came back. But that gains you nothing. The question is, were they able to put in all the facts that they wanted on this issue, and were you able to put in all the facts you wanted on this issue? Absolutely, Judge Niemeyer. What was before the Court on this motion? What factual matters? Not the substantive. What was it, affidavits? There were deposition excerpts, affidavits. There were 123 exhibits by the appellants, many from us. All going to jurisdiction? Yes, Your Honor. And the Court had all that before it? Yes, sir. And then you came to Court and you argued it, all the facts, everybody made his counterarguments and so forth? Yes, sir. And there was no limitation on what could be presented. Was there a discussion about the standard? I don't recall specific discussions of the standard, but Judge Diaz, the appellants would fail to meet the burden no matter what standard is applied, and on every step of the jurisdictional analysis for a specific jurisdiction in this case. I don't know that there was specific discussion of the standard. I believe I may have mentioned that they can't meet either one, whether it's preponderance or whether it is prima facie. I don't understand those to be different, comparative at all. Doesn't prima facie just mean I've said enough to force the issue to the other side? Prima facie means the first showing. I believe that's true, Judge Neumeyer. And so the ultimate determination is a factual finding, which has to be by preponderance the evidence, or some heavier clear evidence or reasonable doubt, beyond a reasonable doubt or whatever. But I don't understand a prima facie case being in the same class as a standard like preponderance of the evidence. It's just a different stage of the proceeding. I think that's true, Your Honor. In fact, the prima facie stage, as Your Honors know from several different types of cases, that means you have met this first part and the burden is now on the other side. The great danger here is that we're going to just woefully overcomplicate what is a threshold determination on personal jurisdiction, on subject matter jurisdiction where diversity cases are concerned. Again, I know there have been cases where district judges have not taken live testimony, particularly where a party hasn't pushed it or even asked for it. And we would be hamstringing district judges to say, well, no matter what, whether a party has asked for it or not, you've got to have live testimony. And, oh, by the way, we're going to hit you with a proof scheme, too, because even in the Title VII context, the Supreme Court has said, we don't want court of appeals delving into the minutia of each stage of the proof scheme. Why? Because that usurps the trial judge's role. We want court of appeals, in reviewing de novo, to simply ask whether there's a genuine dispute of material fact or whether there's an issue of triable fact or whether there's not, given the advantage to the non-prevailing party in the summary judgment context. But if we start imposing a proof scheme on this, where there's a prima facie and then a burden of production and then a burden to show pretext and everything in these jurisdictional discovery cases, and we start putting down, laying down hard and fast rules about no matter how strong the evidence is or how clear the record is, you've got to have live testimony, even in the absence of a request for the same. We are just going to mangle the respective competencies of trial judges and appellate judges. And that's one of the things that's at issue here. We can complicate this thing and make a mess of it. And sometimes these determinations are threshold determinations. Yes, Your Honor, I think that's exactly right, Judge Wilkinson, and this is a good case to show that because there is no other evidence that was going to be submitted. There was no other witness who was going to come challenge something for jurisdiction. The facts were set forth before the district court. A trial judge has got to have some discretion in those sorts of circumstances to go on the record and say, look, I've got what's necessary to decide the case. It's simple and straightforward. Yes, sir. You can hardly say he's clearly in error. Was there any error in the fact that Judge Norton found there were no offices, agents, contracts, communications with VISTA in this district? No, sir. The vision has no contacts in this hemisphere, basically, none in the Americas. There is no contact whatsoever. The only question is a few e-mails or fax cover sheets. And Judge Norton correctly held there's no evidence at all. There are conclusory allegations to suggest that that was within the scope of employment of these people or that it was for a benefit of vision. And so he correctly did not give any weight to that because all they were were these communications which were conflicted. The conflicting evidence for that were deposition excerpts from the CEO, affidavits from the people involved, and the employment contracts, which shows this has nothing to do with it, and the annual reports and other evidence that show vision has nothing to do with financial products whatsoever. This was not within the scope of anything those people do and not within the scope of vision's business. Neither is any contact with the United States. I would ask the previous thing, and he said, well, no, total eclipse was more implicated. The response he gave was total eclipse was more implicated by vision. But I was raising simply the practical question of whether total eclipse prevailed in a jury trial. And the only way you get to vision is through total eclipse. And if total eclipse is more implicated, I mean, as a practical matter, what are we going to achieve by having another jury trial on this same thing? Yes, sir. I think you're right. You're hitting that practical point right on, Judge Wilkinson. It is a practical point, but, you know, practical points when, you know, we talk about the consumption of resources and when you talk about the burdens on district courts, they ought to have some weight. And it's interesting, Your Honor, because this is the first time I've heard that vision was more implicated than total eclipse because the case has been presented totally the other way. In fact, at our jurisdictional hearing, the appellant's counsel said that you go from Bancroft to Bancroft, U.K. to total eclipse, and then it's just a hop and a skip to vision. Well, there is no hop and skip jurisdiction. And so they were trying to argue it derivatively through total eclipse, which would get into completely other, it would get into international law or United Kingdom law, Cypriot law. Those, of course, would be reasons why, under the constitutional reasonableness standard, there's no jurisdiction here. It shouldn't be exercised, even if the other two steps had been satisfied. It's a great attraction to move a company to Cyprus. Your Honor, I have not become an expert in Cyprus business beyond. Maybe all the Americans are missing something. It certainly could be, but they're doing well as a publicly traded company in direct marketing. Really, it's sort of, I compare it to Avon over here, where they have cosmetic and health products. And when you're looking at that reasonableness standard, Judge Niemeyer, that I raised as the third point, which I don't think you ever get to, but if you were to, it would be, if you look at it in reverse, if an officer of Avon had been involved with a scheme, some financial products, and used some correspondence or a fax machine from Avon to send something to Cyprus, and a member of the Cypriot legislature brought suit against Avon for hundreds of millions of dollars, and they exercised jurisdiction over Avon in Cyprus because of this individual officer's random e-mail or fax, I think we would think of a kangaroo court. But the one difference is, though, that we're dealing with a CEO, not a rank-and-file employee. And at some point, a CEO's actions can properly be imputed to the company. Where are we on that continuum here? Well, Judge Dee adds, the Orphan Aid Society v. Jenkins, South Carolina case, makes clear that under South Carolina law that a title does not confer any authority. In fact, there, the president of the entity, who had actually been authorized by the board under other circumstances to conduct the same type of transaction that he later conducted again, didn't have authority from the board for those subsequent transactions. And, in fact, the court indicates that the law is that people dealing with agents must be careful to understand the scope of the agency from the principle. And Judge Dee adds, it's interesting here because no one ever thought vision had anything to do with this. Not Mr. Grayson, who only learned of vision after everything fell apart by doing some Internet research, where he again, Judge Wilkinson, connected it through total eclipse over to vision. But none of the people, no testimony suggested anyone thought vision was ever involved by any of the participants. In fact, the, well, going on again, that Mr. Mr. Bird suggests that even, well, he's not conceding that they weren't involved, but he says at a minimum vision may have been involved in a cover-up by transferring documents and the like, discovery materials. What's your response to that? Well, Judge Dee, as that goes again to the agency issue, which I don't believe it's within the scope or for benefit of vision. But beyond that, the claims first are not, it's not any purposeful availment of vision, even if you accept those communications as visions of South Carolina or the United States. Those are, and it's a second conspiracy, much like in the Mazer case from the 11th Circuit, where the court said, look, you know, just because you're a victim of this conspiracy to steal blueprints, doesn't mean some other conspiracy abroad to sell blueprints gives you jurisdiction, gives the court jurisdiction over the members of the second conspiracy. And, in fact, on the first, it's in the supplemental appendix, Your Honors, but counsel for the appellants, in fact, conceded there were two conspiracies at issue here, even under the way they look at it. So the claims would be separate, Judge Diaz, in that the claims wouldn't arise, the claims against, or the damages wouldn't arise out of our client's secondary conspiracy. In fact, if you look at the first trial, which resulted in the monstrous verdict, and you look at Judge Norton's post-trial order, he delineates exactly how this scheme worked and where the money went and who made decisions, none of it abroad, all of it in the United States. And he even goes, well, Your Honors, he describes that that is how the scheme operated. And one other point that was interesting about the first trial is when they were proving how they were taken advantage of in this scheme that led to those great damages, they never once mentioned either vision or total eclipse. So clearly they weren't necessary or a part of the meeting of the minds that created these damages that now the appellants are seeking to go after 70-some-odd defendants for. Did the district court get into the separate conspiracy point? I thought it just went along on the scope of employment issue. You're right, Your Honor, that because these actions are not actions of vision, then there's no need to get beyond that. Even though we're talking about the legal test for personal jurisdiction ultimately is a due process question under federal law, the scope of employment issue, which is one of those issues that you would need to ask on the way to the ultimate conclusion, has clearly got to be a question of state substantive law. And the Jenkins case does indicate that the scope of employment can't be resolved from title alone, that a CEO or a CFO, for that matter, can be off on their own two. Yes, sir. In the Burris v. Texaco case of this court under South Carolina law is an example where there can be a set of facts that all are before the court where they're not conflicting sworn statements that although one might argue a different conclusion, in that instance it was whether it was an independent contracting arrangement or an actual employment arrangement between Mr. Burris and Texaco, the court decided that that would have been error to submit that to the jury. There are these facts here. There are different conclusions that can be drawn, but it is a question of law whether that is the – there was not a factual dispute sufficient for a jury determination. The court was proper in making that resolution independent. There never was a jury resolution on this, was there? This is a matter for the court. Yes, sir. On the agency, yes. Yes, sir. But that's a very good distinction which gets lost here, Judge Niemeyer, that suggesting that because you might be able to get to the jury on a substantive merits agency case is not the same as whether the court can decide a personal jurisdiction matter. Let me ask you, is there a claim against Sandifer, some outfit named Sandifer, still open? It was transferred to bankruptcy proceeding, an adversary proceeding bankruptcy, and I honestly don't know the status of it. So the ruling on jurisdiction in this case is a final judgment? There's nothing more to be done in the district court? Well, the case was there's nothing more to be done in the district court. That's correct, Your Honor. We don't have any question about whether we can review this order. This is my question, ultimate question. No, I believe that once that case was transferred, Mr. Sandifer was outside of this action, then all of the claims against all of the parties in this action have been decided. All right. Let me ask my colleagues if they have any further. All right. Thank you, Your Honor. Thank you, Mr. Duffy. Let's hear from Mr. Wall. Good morning. My name is Mark Wall. I represent Patrick Kelly, a defendant in this never-ending case. It's been going on for almost 10 years. I'm now arguing a point which did not come up in the appellate's argument because all the questions about jurisdiction. I am here to argue whether or not in South Carolina there exists a cause of action for aiding and abetting fraud. Also, I'd like to introduce to the court Randolph Anderson. He is the pro se defendant. I've been authorized to say that he adopts everything that I say or Mr. Duffy said was worthwhile as his appeal. To put it flatly, in South Carolina, there exists no cause of action for aiding and abetting fraud, period, end of argument. Appellants in their brief acknowledge that there are no cases in South Carolina that set forth a cause of action for aiding and abetting fraud. The respondents agree. The trial court also agreed. There are no cases that reject it outright. That's correct. So why isn't this a matter for the South Carolina courts? It may be for the South Carolina courts. Why can't it be in the first instance via certification? No one asked for it. And the court sitting in diversity has no power or right to expand South Carolina law. And so, therefore, it ended where it did, where the judge ruled there is no law, there is no cause of action. If the plaintiff wanted to, he could have asked for certification to the Supreme Court. He didn't ask for it. And there's no countervailing federal issue as to why the court should try and expand state law to cover aiding and abetting. Finally, they come back the next day, well, the judge should have charged something. What is he going to charge? There's no elements that we know of for aiding and abetting. I guess the argument is if you aid and abet fraud, you really are committing fraud. And the jury found that none of these defendants committed fraud. Yeah, and it seems to me it would be very hard to aid and abet fraud without committing fraud yourself. And so you submit that to the jury under the elements of fraud. And what does the person who's allegedly aiding and abetting have to know about the primary fraud? Does he have to have actual knowledge of it? Constructive knowledge of it? Knew or should have known? What's the burden? Is it reasonable doubt? Is it preponderance? Is it clear and convincing? We don't know the answer to those questions. My time is up. I'll be glad to answer your questions. The main point is three defendants went to the jury on four causes of action, and the jury found on behalf of all four causes of action for the three defendants. Thank you. Let me address the substantive issue first. Yes, a very good question, that is, can you aid and abet a fraud without committing the fraud? The answer is absolutely yes, you can. If you think in terms of an organization, there may only be one speaker that actually deals with the victim. But, in fact, there may be a plethora of people behind the organization, like in this case. You've got clerks. You've got administrative people. You have a lot of people that are implicated in this scheme, which, lest any of us forget, was a massive, documented, well-established fraud, a Ponzi scheme. Of course, it's not going uncorrected. Wasn't there a $150 million judgment in connection with this fraudulent stock liquidation? It was, and Mr. Grayson got a judgment for $34 million. But the fact that you get some of the bad guys doesn't mean the rest of them go unaddressed, if you will. One-third? Is that what their going rate is for a tried case? Well, I don't know whether there's a contingency case fee in that matter, Your Honor. Certainly, I'm not on a contingency fee. Part of my feeling about this is you really have had your crack before a jury. You've had your day in court before a jury, and you've had an awful lot of defendants up there, and you've tried to pin the label of tort feasers and fraud committers on there, and the jury just didn't buy it. And a good part of this appeal seems to be reaching here and there for a second bite at the apple. You want, essentially, another jury trial when the essence of your case, which is, are these defendants implicated? Were they implicated in the fraud? The jury's heard that. I feel like a decent process has been accorded to you. You had lengthy jurisdictional discovery, and you had an evidentiary hearing on the personal jurisdiction point with regard to VISTA, and you had a jury trial with respect to all of the defendants but VISTA, and the jury trial went against you, and you're up here now. I don't blame you for being up here. I certainly have a right to appeal, but the point is, as a matter of process, both on the due process personal jurisdiction point and on the question of whether these particular defendants were involved with fraud, you've had a good day in court, not just a minute or a second or an hour in court, but a good long time in court. How long has this case been going on? Don't back up the question. How long has this case been going on? This case has been in one form or another almost since 07. Eight years. Yes, sir. And how long did the trial go on, the jury trial? This case over the better part of two weeks, this last trial. The jury trial went on for two weeks? Yes, sir. Okay. That's not just a day in court? Well, but with this one missing element. One of the main causes of action. When you have a scheme like this and you've got the principal actors and then you have the support, the secondary actors, no less culpable, but they're not dealing directly with or making the representations, you can't just say they get a pass because they didn't speak. And that was the argument we made with Judge Norton, that aiding and abetting as a fundamental tort principle has to exist, because otherwise the only guy that gets in trouble is the one that opens his mouth and the others go scot-free. That seems to me to be fundamentally flawed. Given the inventive characteristics of lawyers, I would think if an aiding and abetting fraud cause of action existed in South Carolina, that it would have been brought up in case after case after case, and if it was a viable theory of recovery, I can't imagine it would have gone through this long a period of disutilization. And it does strike me as odd that the only context in which we've seen this particular variety of tort are in very, very specialized circumstances. You've got a district judge who's steeped in South Carolina law and has been dealing with it for years and years, and he just says, I ain't seen anything like this before. Well, and yet, Your Honor, the Connolly case, 96 years it's been on the books, says anybody who aids, countenances, or assists a fraud is guilty of the tort. All it is is taking that basic bedrock concept and saying when it comes to a fraud, you can't aid or abet a fraud. If he had done nothing more than say, it's not just making a false statement or misrepresentation, it's aiding and abetting those that do, that would have solved the problem. In this case, he took aiding and abetting off the table altogether. And I see I have 17. Do we have any questions? Paul? Al? I know there's a cross appeal of some kind. Pardon me? There's a cross appeal? I believe those were abandoned, Your Honor. That was a jurisdictional challenge by total eclipse. Sometimes when things aren't brought up in argument, we still can take them on the briefs because it doesn't mean, if you don't bring up something in oral argument, it doesn't mean it's waived. Yes, sir. We just take them on the briefs. Okay. Thank you, Mr. Brown. All right. Thank you, Your Honor. We'll come down and we'll adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. Dossie, United States, in this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz